UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

360 N. RODEO DRIVE LP,

                                    Plaintiff,

            – against –

WELLS FARGO BANK, NATIONAL
ASSOCIATION, MIDLAND LOAN
SERVICES, *and* DOES 1 THROUGH
10,

                                    Defendants.

**OPINION & ORDER**

22-cv-767 (ER)

RAMOS, D.J.:

        360 N. Rodeo Drive LP ("Plaintiff"), a limited partnership that owned a luxury
hotel in Beverly Hills, California, brings this action against Wells Fargo Bank, N.A.
("Wells Fargo"), Midland Loan Services,[1] and ten unknown individual defendants
(collectively, "Defendants") for breach of contract, breach of the covenant of good faith
and fair dealing, breach of a special servicing agreement, intentional misrepresentation,
negligent misrepresentation, money had and received, and unjust enrichment.  Complaint
("Compl."), Doc. 1 ¶¶ 30–85.  In short, Plaintiff alleges that Defendants improperly
required it to pay over $9.5 million in penalties, fees, and interest associated with a loan
agreement between the parties, despite various representations that it would not incur
those fees.  *Id.* ¶¶ 1–10.

        Before the Court is Defendants' motion to dismiss the complaint, or, in the
alternative, to strike various allegations set out in the complaint.  Doc. 27.  For the
reasons set forth below, the motion is GRANTED in part and DENIED in part.

---

[1] Midland Loan Services is a division of PNC Bank, National Association, and serves as the bank's
commercial mortgage servicing division.  Compl. ¶ 11.

## I.    BACKGROUND

### A. Factual Background[2]

Plaintiff previously owned a luxury hotel on Rodeo Drive in Beverly Hills, California.  Compl. ¶ 1.  On May 25, 2017, Plaintiff refinanced the property and borrowed $38 million from Wells Fargo's predecessor in interest.  *Id.* ¶ 2; *see also* Loan Agreement, Doc. 30-1.  The parties' written loan agreement provided that Plaintiff would not "undertake or participate in activities other than the continuance of its present business or otherwise cease to operate the Property as a hotel and retail property or terminate such business for any reason whatsoever (other than temporary cessation in connection with renovations to the Property)."  Loan Agreement at 56 § 5.15.  In the event that Plaintiff did so, it would be in default.[3]  *See id.*; Compl. ¶ 2.  The agreement did not contain a *force majeure* clause.

Just short of three years after the parties entered into the loan agreement, the COVID-19 pandemic struck.  Compl. ¶ 3.  Plaintiff notes that the mayor of Los Angeles and the governor of California issued "strict stay-at-home orders," and occupancy at the hotel plummeted.  *Id.*  At that point, Plaintiff decided to close the hotel because the cost of operations exceeded the revenues being generated.  *Id.*

Plaintiff discussed the decision with a representative of Midland, Chris Valencia.  According to Plaintiff, "[Wells Fargo] fully understood and concurred with the decision, which made economic sense."  *Id.* ¶ 4.  Additionally, Valencia stated that "[a]s long as you're making your mortgage payments, you're totally fine.  We know that you're closed

---

[2] In reviewing dismissal of a complaint pursuant to Rule 12(b)(6), the Court takes as true all of the allegations contained in the complaint and draws all inferences in favor of the plaintiffs.  *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 145 (2d Cir. 2002).  "Documents that are attached to the complaint or incorporated into it by reference are deemed part of the pleading" and are also considered by the Court here.  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (citation omitted).

[3] As relevant here, the loan agreement also provided that any delay in the exercise of a remedy, right, or power did not constitute waiver, and a waiver of a default did not constitute waiver of subsequent defaults.  Loan Agreement at 80 § 8.2.4.  The loan agreement also contained an exculpatory clause prohibiting claims for consequential, exemplary, or punitive damages.  *See id.* at 94 § 10.13.

because of the pandemic, but you're fine[.]" *Id.*  Valencia repeated that "no ill consequences would follow as long as Plaintiff kept making payments."[4]  *Id.*

Plaintiff made the required payments "with minor exceptions that were excused by [Wells Fargo]."[5]  *Id.* ¶ 5.  During that time, and for fourteen months after the closure of the hotel, Wells Fargo "sent monthly loan statements that expressly noted there were *no* amounts due or owing ('$0.00') for 'default interest.'"  *Id.*  And in December 2020, Plaintiff once again contacted Midland to confirm the state of affairs.[6]  *Id.* ¶ 6.  Plaintiff stated that it wanted to confirm that there were no monetary implications to the hotel's closure given that it was making its payments.  *Id.*  Valencia confirmed and stated the following:

> You should see what's going on with some of our other borrowers.  You guys are in great shape.  Best borrowers I have.  Don't worry at all. You're making your payments, it's not a problem.

*Id.*

However, Defendants' position suddenly changed in July 2021.  *Id.* ¶ 7.  On July 22, 2021, Midland "claimed for the first time that default interest was owed and had been

---

[4] Of note, the loan agreement provided that any modification of the agreement would not be effective unless it was memorialized in a writing signed by the parties.  Loan Agreement at 92–93 § 10.7.

[5] Plaintiff notes that "[d]ue to the cessation of Hotel operations, Plaintiff accidentally failed to deposit sufficient funds into the [payment] account for the months of April and May of 2020."  Compl. ¶ 22.  It further states that "Midland and [Wells Fargo] excused and waived these late payments, in exchange for a $5,000 transaction fee and an additional $5,000 payment towards [Wells Fargo]'s legal fees and expenses." *Id.*  These waivers were memorialized in a Loan Modification Agreement dated May 18, 2020.  *Id.*; *see also* May 2020 Loan Modification Agreement, Doc. 30-2.  A similar default occurred on November 6, 2020, which prompted another Loan Modification Extension Agreement.  Compl. ¶ 23; *see also* November 2020 Loan Modification Agreement, Doc. 30-3.  In it, Wells Fargo and Midland excused and waived any default, default interest, or late fees.  Compl. ¶ 23; November 2020 Loan Modification Agreement.

[6] In early December, Plaintiff also considered repurposing the property from hospitality to retail.  Compl. ¶ 25.  Plaintiff did not ultimately do this after Midland concluded, in April 2021, that the loan agreement "did not provide the parties with sufficient flexibility to allow for the conversion[.]"  *Id.* ¶ 26.  Midland recommended paying off the loan and obtaining more flexible financing instead.  *Id.*  It advised Plaintiff that it was working on a proposed special servicing agreement for waiving penalties for prepayment, *id.* and it provided Plaintiff with a plan whereby Plaintiff would incur some, but not all, prepayment fees, *id.* ¶ 27.  On May 19, 2021, Plaintiff sent Midland a message indicating it would be willing to incur the limited fees associated with the transfer to special servicing, including a "work-out fee" and legal fees, but only if there was an agreement between the parties as to the extent of the penalties.  *Id.*

owed *over the last fourteen months*; over that time, interest had accrued at the rate of nearly $6,000 per day; millions of dollars were already owed; and default interest would continue to run until the Loan was paid off, at the clip of approximately $180,000 per month." *Id.* (emphasis in original).

Plaintiff unsuccessfully challenged the new charges, and had no choice but to sell the property. *Id.* ¶ 8.  Following the closing, the proceeds of the sale were placed in an escrow account. *Id.* ¶ 76.  Defendants asserted an entitlement to over $9.5 million in default interest, payment penalties, liquidation fees, and attorneys' fees. *Id.* ¶ 8.  Plaintiff was required to pay these sums to complete the sale, which Plaintiff did "under protest." *Id.*

Plaintiff seeks to recover these fees in addition to lost opportunity costs, interest, attorneys' fees, and punitive damages in excess of $25 million.  *Id.*

### B.  Procedural History

Plaintiff filed the complaint on January 28, 2022.  *See* Compl.  Thereafter on April 7, 2022, Defendants filed a letter motion for a pre-motion conference in anticipation of the instant motions to dismiss and to strike various allegations.  Doc. 24.  Plaintiff responded, Doc. 26, and the Court held a conference on April 27, 202, Min. Entry dated Apr. 27, 2022.

The parties briefed the motions, which were fully submitted on June 15, 2022.[7] *See* Doc. 33.

---

[7] During briefing, Defendants filed a request for judicial notice of various documents:  (1) the loan agreement, Doc. 30-1; (2) the May 2020 Loan Modification Agreement, Doc. 30-2; (3) the November 2020 Loan Modification Agreement, Doc. 30-3; and (4) the grant deed documenting the sale of the hotel; Doc. 30-4.  *See generally* Doc. 30.  Plaintiff consented to the request, except as to the grant deed.  *See* Doc. 34 (noting that Plaintiff opposes the request as to the grant deed).

## II.    LEGAL STANDARD

### A.  Motion to Dismiss

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

When determining whether that standard has been met, the Court may consider the complaint itself, as well as all documents attached thereto or incorporated therein.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); *Foros Advisors LLC*, 333 F. Supp. 3d 354, 357 (S.D.N.Y. 2018).  A document is incorporated when it is referenced in the complaint or when its terms and effects are relied upon heavily such that it may be considered "integral" to the pleadings.  *Chambers*, 282 F.3d at 152–53 (citation omitted); *see also Palin v. N.Y. Times Co.*, 940 F.3d 804 (2d Cir. 2019); *Beauvoir v. Israel*, 794 F.3d 244, 248 n.4 (2d Cir. 2015) (quoting *Roth*, 489 F.3d at 509) ("It is well established that '[d]ocuments that are attached to the complaint or incorporated into it by reference are deemed part of the pleading and may be considered.'").

To survive a Rule 12(b)(6) motion, the plaintiff must allege sufficient facts to show more than a "mere possibility" that a defendant has acted unlawfully.  *Twombly*, 550 U.S. at 557.  This "flexible 'plausibility standard'" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (internal quotation marks and citation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.  The

question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citations omitted).

Accordingly, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *see also Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable . . . ."). However, to the extent that the exhibits attached to the complaint credibly contradict the allegations attached within the complaint itself, the Court may conclude that the allegations are not, in fact, plausible. *Beauvoir*, 794 F.3d at 248 (concluding that a "threadbare recital" in the complaint was contradicted by the attached exhibit, and Plaintiffs thus failed to plausibly allege their claim).

### B.  Motion to Strike

Motions to strike are generally disfavored, *City of New York v. FedEx Ground Package Sys., Inc.*, No. 13 Civ. 9173 (ER), 2017 WL 633445, at *2 (S.D.N.Y. Feb. 14, 2017), and "courts should not tamper with the pleadings unless there is a strong reason for so doing," *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). Accordingly, a motion to strike "will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the [allegation]." *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744

F.2d 935, 939 (2d Cir. 1984) (internal quotation marks omitted), *vacated and remanded on other grounds*, 478 U.S. 1015 (1986).

Courts in this Circuit typically apply a stringent three-part test to motions to strike pursuant to Rule 12(f):  "(1) there must be no question of fact that might allow the [allegation] to succeed; (2) there must be no substantial question of law that might allow the [allegation] to succeed; and (3) the [moving party] must be prejudiced by the inclusion of the [allegation]."  *See, e.g.*, *FedEx*, 2017 WL 633445, at *3; *Specialty Mins., Inc. v. Pluess-Stauger AG*, 395 F. Supp. 2d 109, 111 (S.D.N.Y. 2005) (same); *see also* Fed. R. Civ. P. 12(f).  When considering the first and second prongs, courts apply a similar legal standard as that applicable to a motion to dismiss under Rule 12(b)(6):  they must determine the "sufficiency of a defense . . . solely upon the face of the pleading" and "accep[t] as true all well-pleaded factual allegations and dra[w] all reasonable inferences in the [non-moving party's] favor."  *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 425 (S.D.N. Y 2010).  In other words, a motion to strike "is not intended to furnish an opportunity for the determination of disputed and substantial questions of law."  *Cty. Vanlines Inc. v. Experian Info. Sols., Inc.*, 205 F.R.D. 148, 153 (S.D.N.Y. 2002).

The third prong of the test requires denial of a motion to strike if there is no showing of prejudice.  Such prejudice may be found, for example, when inclusion of the "legally insufficient defense would needlessly increase the time and expense of trial or duration and expense of litigation."  *FedEx*, 2017 WL 633445, at *3 (internal quotation marks omitted).  Mere assertions of prejudice by the moving party are insufficient to satisfy this prong.  *Cty. Vanlines*, 205 F.R.D. at 153.

### C.  Request for Judicial Notice

Under Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it:  (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from

sources whose accuracy cannot reasonably be questioned."  The Court may take judicial notice of a fact on its own and must take judicial notice of a fact if a party requests it and the court is supplied with the necessary information.  Fed. R. Evid. 201(c).

## III.   DISCUSSION

Defendants move to dismiss the complaint, or in the alternative, to strike portions of the complaint in order to limit damages.  *See generally* Memorandum of Law in Support of Motion ("Mem. in Supp. Mot."), Doc. 28.  The motion is granted in part and denied in part.

### A.   Request for Judicial Notice of Documents in Consideration of Motion

As a preliminary matter, the Court addresses Defendants' request for judicial notice of various documents in consideration of its pending motion, including:  (1) the loan agreement, Doc. 30-1; (2) the May 2020 Loan Modification Agreement, Doc. 30-2; (3) the November 2020 Loan Modification Agreement, Doc. 30-3; and (4) the grant deed documenting the sale of the hotel; Doc. 30-4.  *See generally* Doc. 30.

Plaintiff consents to the request as to the loan agreement and the loan modification agreements, and they are otherwise incorporated into the complaint by reference; therefore, the Court will take judicial notice of those documents.  *Roth*, 489 F.3d at 509; *see also* Doc. 30-2; Doc. 30-3.  The Court also takes judicial notice of the grant deed given that, as Defendants note, it is a public record, Doc. 30 ¶ 4; Doc. 34 at 2–4, and neither its accuracy nor authenticity can be reasonably questioned.  Fed. R. Evid. 201(b); Doc. 30-4.

### B.  Motion to Dismiss

Defendants move to dismiss the complaint on the basis that Plaintiff knowingly defaulted when it shut down the hotel, despite the "heavily negotiated and very detailed" loan agreement and related documents prohibiting the closure.  Mem. in Supp. Mot. at 6.

In other words, Defendants argue that Plaintiff breached the agreement, and they had the right to collect the charged fees after Plaintiff closed the hotel.  *See id.* at 6–24.

> ### *i.* **Count I:  Breach of the Loan Agreement**

Count I alleges that Plaintiff "performed all of its obligations under the Loan Agreement except those that were waived, excused, immaterial, or rendered impossible and/or impracticable," and Wells Fargo breached the agreement by "demanding that Plaintiff pay 'default interest' in the amount of $3,632,355.17 based on the closure of the Hotel."  Compl. ¶¶ 32–33.

Under New York's general principles of contract formation, a party seeking enforcement must show that there was an offer, acceptance, consideration, mutual assent, and the intent to be bound by the contract.  *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004) (citing *Louros v. Cyr*, 175 F. Supp. 2d 497, 512 n.5 (S.D.N.Y. 2001)).

As relevant here, New York General Obligations Law § 15-301(1) provides that a written agreement "which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent."  N.Y.G.O.L. § 15-301(1).  "By its terms, however, this section applies only to 'executory agreements,' and accordingly, under the doctrine of partial performance, such an oral agreement may be enforced even in the absence of a writing if either party has partially performed under the terms of the oral agreement."  *Merrill Lynch Interfunding, Inc. v. Argenti*, 155 F.3d 113, 121 (2d Cir. 1998) (citing *Rose v. Spa Realty Assocs.*, 366 N.E.2d 1279, 1283 (1977)); *see also* N.Y.G.O.L. § 15-301(1)–(3).

Additionally, "failure to include a *force majeure* clause . . . does not preclude Plaintiff from alleging extra-contractual doctrines such as frustration of purpose and impossibility of performance."  *1877 Webster Ave. Inc. v. Tremont Ctr., LLC*, 148 N.Y.S.3d 332, 338 (N.Y. Sup. Ct. 2021); *see also* Stephen P. Younger, Muhammad Faridi & Timothy Smith, *Covid-19's Impact on Commercial Transactions and Disputes*, N.Y. St.

B.J., April 2020, at 23–24 (noting that parties whose operations were compromised by the pandemic may avail themselves to various defenses including frustration of purpose, which is available "regardless of whether the contract specifically mentions the doctrine," and impossibility).

Considering this context, the Court denies Defendants' motion to dismiss Count I at this early stage.  Plaintiff has plausibly stated a breach of contract claim, *Iqbal*, 556 U.S. at 678, and it is entitled to offer evidence to support the claim, *Nath*, 893 F. Supp. 615.  While it is true that the loan agreement contained no *force majeure* clause and otherwise required that oral modifications be memorialized in writing, Plaintiff has sufficiently alleged that it partially performed and otherwise encountered "unprecedented" and "unimaginable" circumstances due to the COVID-19 pandemic, thus rendering Defendants' fee collection a breach of the parties' agreement.  Compl. ¶ 19.  Plaintiff invoked the doctrines of frustration of purpose and impossibility and provided facts to support those claims.  *See* Compl. ¶¶ 32–33.  Additionally, Plaintiff plausibly set forth its understanding that it was excused from complying with the loan agreement's obligations on several occasions.  *See, e.g.*, *id.* ¶ 32 ("Specifically with regard to Plaintiff's obligation to not 'cease to operate the Property as a hotel and retail property,' that obligation was excused and rendered impracticable and/or impossible by the pandemic and the resulting 'stay at home' orders issued by the civil authorities.  In addition, the obligation was excused by [Wells Fargo]'s conduct and statements, as set forth above.")

The Court emphasizes that it is tasked with testing only the "formal sufficiency of the plaintiff's statement of a claim for relief[,] without resolving a contest regarding its substantive merits" at this stage.  *Berv*, 644 F.3d at 130 (internal quotation marks and citations omitted).  Accordingly, while the Court concludes that Plaintiff sufficiently stated its claim, it reiterates that Defendants will have the opportunity to raise their arguments at a later point in the proceedings.

*ii.* **Count II:  Breach of the Implied Covenant of Good Faith & Fair Dealing**

Count II alleges that Wells Fargo breached the implied covenant of good faith and fair dealing by, among other things, sending Plaintiff inaccurate monthly statements from September 2020 to May 2021 that "affirmatively represented that there was '0.00' due and owing on 'Default Interest,'" despite the assessment that those fees were, in fact, due. Compl. ¶ 40.

According to Defendants, this claim is "duplicative of Plaintiff's claim for breach of the Loan Agreement and fails for the same reasons," particularly given that "there was no waiver to Defendants' rights under the Loan Agreement[.]"  Mem. in Supp. Mot. at 16, 17.

Under New York law, the duty of good faith and fair dealing "is implied in every contract, to the effect that neither party 'shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'"  *CCR Int'l, Inc. v. Elias Grp., LLC*, No. 15 Civ. 6563 (PAE), 2021 WL 1253892, at *4 (S.D.N.Y. Apr. 5, 2021) (citing *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407 (2d Cir. 2006)).  There is a presumption that all parties act in good faith, so the burden of proving a breach of the covenant rests with the party asserting the absence of good faith.  *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 98 (2d Cir. 2007) (citing 23 WILLISTON ON CONTRACTS § 63:22 (4th ed. 2006)). Importantly, New York law "does not recognize a separate cause of action of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled."  *Harris v. Provident Life and Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002).  However, such a claim is not duplicative when the claim "depends on [other] facts *in addition to those* that might support a breach of contract claim."  *Fantozzi v. Axsys Techs., Inc.*, No. 07 Civ. 2667 (LMM), 2007 WL 2454109, at *3 (S.D.N.Y. Aug. 20, 2007) (emphasis added); *see also F&R Goldfish Corp. v. Furleiter*, 210 A.D.3d 643, 646 (2d Dep't 2022) ("[T]he cause of action alleging breach of the implied covenant of

good faith and fair dealing was not duplicative of the breach of contract cause of action since it alleged that the defendants engaged in additional conduct to realize gains from the plaintiffs, while depriving the plaintiffs of the benefits of the parties' agreements.").

The Court denies Defendants' motion as to Count II.  As a preliminary matter, the factual basis for the claim is sufficiently distinct from the facts supporting Plaintiff's breach of contract allegation.  *Compare* Compl. ¶¶ 30–36 (arguing that Defendants breached the loan agreement by demanding default interest when there was no contractual justification for the demand given Defendants' oral representations about operations during COVID-19 and their explicit approval of the hotel's closure) *with id.* ¶¶ 37–45 (arguing that Defendants breached the covenant by materially misstating the fees owed by Plaintiff over the course of sixteen months, as the fees were accruing, thereby preventing Plaintiff from taking action in mitigation).  As Plaintiff puts it, "the breach of contract claim turns on Defendants' unjustified attempt to charge default interest when there was no contractual justification for the same," and "the implied covenant claim turns on Defendants' duty to provide accurate statements as to any charges or fees Defendants sought to assess . . . ."  Memorandum of Law in Opposition to Motion ("Mem. in Opp'n Mot."), Doc. 31 at 22.  Accordingly, Count II is properly pleaded as a separate cause of action from the breach of contract claim at this stage in the proceedings.  *Harris*, 310 F.3d at 81; *Berv*, 644 F.3d at 130 ("[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits.").

Furthermore, Plaintiff has sufficiently alleged that Defendants acted in a manner that impeded Plaintiff from benefiting from the loan agreement.  *Elias Grp., LLC*, 2021 WL 1253892, at *4.  As Plaintiff notes, its claim "does not turn on the implied covenant supplying a contractual term that Defendants have violated; rather, Plaintiff alleges that Defendants' written statements confirming that no default interest was due[,] and [their]

unjustifiable delay in taking the position that default interest had actually been accruing all along[,] deprived Plaintiff of its rights and options under the Loan Agreement to prevent or mitigate the accrual of any default interest." Mem. in Opp'n Mot. at 23. In other words, the claim stems from Defendants' failure to timely notify Plaintiff of the default and corresponding fees so that it could change course in time to avoid accruing additional fees and interest, not on an express violation of a term of the agreement. *See id.* Accordingly, that "there was no waiver of Defendants' rights under the Loan Agreement," and that "the Loan Agreement and the[] two loan modification agreements expressly disclaimed any such waivers," do not carry the weight that Defendants attach to them here. *See* Mem. in Supp. Mot. at 17 ("There can be no breach of the implied covenant when Defendants' actions were specifically allowed under and consistent with the agreements between the parties.").

The motion is therefore denied as to Count II.

### *iii.* Count III:  Breach of Special Servicing Agreement

In Count III, Plaintiff alleges that Defendants breached a special servicing agreement that the parties allegedly entered into in May 2021. Compl. ¶¶ 46–47. Plaintiff contends that the agreement provided that:  the loan agreement would be transferred to special servicing; any prepayment penalty on the loan would be reduced or eliminated entirely; and Plaintiff would be obligated to pay a "work-out fee" and legal fees associated with special servicing only if the parties came to an agreement as to the extent of any prepayment penalty. *Id.* ¶ 47. Plaintiff contends that the contract was "confirmed by email" with those terms; however, Defendants nevertheless charged the "work-out fee" and legal fees. *Id.* ¶¶ 27 (noting that Plaintiff sent an email on May 19, 2021, stating that "it would be willing to incur the work-out fee and legal fees associated with the transfer to special servicing but *only* if there was an agreement on the extent of any prepayment penalty) (emphasis in original); *see also id.* ¶¶ 47, 49.

According to Defendants, "the alleged oral Special Servicer Agreement is unenforceable" because "(1) it is a mere oral agreement to agree" and "(2) the Loan Agreement required any modifications to be in writing."  Mem. in Supp. Mot. at 17–18. Defendants cite a number of cases noting that mere "agreement[s] to agree" do not give rise to enforceable contracts where material terms are left to future negotiations.  *Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 109 (1981); *DCR Mortg. VI Sub I, LLC v. Peoples United Fin., Inc.*, 148 A.D.3d 986, 987–88 (2017).

As set forth above, under New York's general principles of contract formation, a party seeking enforcement must show that there was an offer, acceptance, consideration, mutual assent, and the intent to be bound by the contract.  *Verio, Inc.*, 356 F.3d at 427 (citation omitted).

The Court agrees with Defendants' arguments and dismisses Count III.  The complaint's own allegations make clear that the parties only agreed to *possibly* come to a servicing agreement in the future.  Compl. ¶ 27 ("Relying on those representations, Plaintiff responded on May 19, 2021[,] that it *would* be willing to incur the work-out fee and legal fees associated with the transfer to special servicing *but only if* there *was* an agreement on the extent of any prepayment penalty.") (emphasis added); *see also id.* ¶¶ 46–49.  The complaint does not allege that the parties did indeed (1) agree to the terms of such an agreement and (2) make the agreement final.  In fact, the March 19, 2021, email—which allegedly "confirmed" the parties' agreements—very clearly made any final contract conditional upon further negotiations between the parties.  *See* Compl. ¶ 27 (using conditional language in describing the parties' discussions regarding possible terms of the servicing agreement).

The motion to dismiss is therefore granted as to Count III.

*iv.* **Count IV:  Intentional Misrepresentation**

In Counts IV, Plaintiff alleges that Defendants repeatedly misrepresented that it owed no default interest over the course of many months, and it would not incur

prepayment penalties.  Compl. ¶¶ 52–63.  Plaintiff contends that this was done knowingly and with the intent of causing it to incur large fees.  *See id.* ¶ 57.

Under New York law, "a claim for intentional misrepresentation . . . is identical to a claim for fraud."  *Assoun v. Assoun*, No. 14 Civ. 1368 (PAC), 2015 WL 110106, at *5 (S.D.N.Y. Jan. 7, 2015) (collecting cases).  "[F]raud requires proof of (1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages."  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 170 (2d Cir. 2015).  Where a plaintiff alleges fraudulent concealment, it must specify "(1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud."  *Malmsteen v. Berdon, LLP*, 477 F. Supp. 2d 655, 664 (S.D.N.Y. 2007).  Because such a claim is premised on fraud, it must meet Federal Rule 9(b)'s heightened pleading standard, which requires pleadings to "state with particularity the circumstances constituting the alleged fraud."  Fed. R. Civ. P. 9(b).  To satisfy this standard, Plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).

Plaintiff failed to sufficiently plead its intentional misrepresentation claim.  While the complaint alleges that Defendants made material misrepresentations that Plaintiff relied on, it failed to state sufficient facts showing that Defendants' misstatements were knowingly made *in order to induce* Plaintiff's reliance.  *Loreley Fin.*, 797 F.3d at 170.  Rather, the complaint suggests that an individual employee of Midland, Valencia, carelessly told Plaintiff that it would be "totally fine" despite closure of the hotel and the corresponding terms of the loan agreement.  Compl. ¶ 4.  Similarly, that Wells Fargo sent plaintiff statements expressing that there was no default interest due over the course of

fourteen months does not inherently amount to knowledge of falsity and intent to induce Plaintiff to rely on false statements.  *Loreley Fin.*, 797 F.3d at 170.

To be sure, the complaint contains many facts supporting the contention that Defendants acted with significant negligence and recklessness when they communicated with Plaintiff regarding its obligations under the loan agreement in light of the COVID-19 pandemic.  *See, e.g.*, Compl. ¶¶ 1–8, 16–29.  However, those facts do not go as far as showing that misstatements were knowingly made in order to induce Plaintiff's reliance.  That allegation is made in a conclusory fashion in one paragraph of the complaint, where Plaintiff states that "Defendants made these representations with the intent of deceiving Plaintiff, inducing it to maintain and continue paying on the Loan despite the accrual of default interest, transfer the loan to 'special servicing,' and incur the specific fees set forth above."  *Id.* ¶ 57.  While Count IV incorporates the complaint's prior paragraphs, the alleged facts do not plausibly show the intent to deceive described by Plaintiff.

Count IV is therefore dismissed.

### *v.*  Count V:  Negligent Misrepresentation

Count V argues that Defendants negligently made the misrepresentations described above, namely, that Plaintiff (1) owed no default interest over the course of many months and (2) would not incur prepayment penalties.  Compl. ¶¶ 64–74.

A claim for negligent misrepresentation must show "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information."  *J.A.O. Acquisition Corp. v. Stavitsky*, 863 N.E.2d 585, 587 (N.Y. 2007).

"A special relationship may be established by 'persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified.'"  *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1109 (N.Y. 2011) (quoting

*Kimmell v. Schaefer*, 675 N.E.2d 450, 454 (N.Y. 1996)).  Factors bearing on this inquiry include "whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose."  *Kimmell*, 675 N.E.2d at 454.

Defendants' motion is granted as to Count V.  In this case, the complaint certainly sets out facts in support of the claim that Defendants made various material misrepresentations that Plaintiff reasonably relied upon.  Indeed, it was told over many months that it would be "totally fine," when it closed the hotel, and Defendants' monthly statements reflected a balance of $0.00 in "default interest."  Compl. ¶ 4, 5.

However, Plaintiff failed to sufficiently plead a special relationship.  As Defendants note, "[t]here is no fiduciary duty or privity of contract arising out of the contractual arms-length debtor and creditor relationship between a borrower and a bank which would give rise to a cause of action for negligent misrepresentation."  Mem. in Supp. Mot. at 21 (quoting *Village On Canon v. Bankers Trust Co.*, 920 F. Supp. 520, 531–32 (S.D.N.Y. 1996)).  And in this case, Plaintiff has not provided facts showing that its relationship with Defendants extended beyond that threshold.  While Plaintiff claims that it has "expressly alleged that there was a special relationship between Plaintiff and Defendants, namely, that Defendants were obligated to provide accurate statements reflecting the position Defendants had taken and/or would take regarding default interest penalties and negotiations over the prepayment premium," it does not show *how* this is distinct from any other standard lender-borrower relationship.  Mem. in Opp'n Mot. at 30 (citing Compl. ¶¶ 66, 67); *see also Citibank, N.A. v. Silverman*, 85 A.D.3d 463, 466 (1st Dep't 2011) (finding that a party's "conclusory allegations that [its] relationship with [the other party] was more than that of a lender and borrower and that he relied on [the other party's] advice are insufficient to raise the inference that [the] bank-borrower relationship was special) (citation omitted).

Accordingly, the motion is granted as to Count V.

*vi.* **Counts VI & VII:  Money Had & Received and Unjust Enrichment**

Plaintiff also seeks to recover in quasi-contract.  In Count VI of the complaint, Plaintiff alleges that "[f]ollowing the closing of the sale of the Hotel property, the sale proceeds were deposited in an escrow account from which Defendants claimed an interest in 'default interest' in the amount of $3,632,355.17, a liquidation fee in the amount of $437,816.02, legal fees in the amount of $52,662.71, and a prepayment penalty fee of $5,538,986.37."  Compl. ¶ 76.  It argues that the money was intended for the benefit of Plaintiff but was received by Defendants, and Defendants have failed to return it.  *Id.* ¶¶ 78–79.  Relatedly, Count VII alleges that Defendants were unjustly enriched as a result of these circumstances.  *Id.* ¶ 84.

Under New York law, an action for money had and received lies when "(1) defendant received money belonging to plaintiff; (2) defendant benefitted from the receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money."  *Aaron Ferrer & Sons Ltd. v. Chase Manhattan Bank*, 731 F.2d 112, 125 (2d Cir. 1984).

Additionally, and relatedly, to state a claim for unjust enrichment under New York law, a plaintiff must prove that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover.  *Briarpatch Ltd. v. Phx. Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004), *cert. denied*, 544 U.S. 949 (2005).  "The 'essence' of such a claim 'is that one party has received money or a benefit at the expense of another.'"  *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (quoting *City of Syracuse v. R.A.C. Holding, Inc.*, 258 A.D.2d 905 (4th Dep't 1999)).

Both quasi-contract claims are precluded if a valid contract covers the subject matter of the dispute.  *First Hill Partners, LLC v. Bluecrest Cap. Mgmt.*, 52 F. Supp. 3d 625, 634 (S.D.N.Y. 2014); *see also Kavitz v. Int'l Bus. Machs. Corp.*, No. 09 Civ. 5710,

2010 WL 11507447, at *10 (S.D.N.Y. Aug. 27, 2010) ("Here, Plaintiff's claim for money had and received merely duplicates his breach of contract claim, and so is not actionable.").  To be sure, "[a]t the pleading stage, [a party] is not required to guess whether it will be successful on its contract . . . or quasi-contract claims."  *St. John's Univ., N.Y. v. Bolton*, 757 F. Supp. 2d 144, 183 (E.D.N.Y. 2010); *see also Maalouf v. Salomon Smith Barney, Inc.*, No. 02 Civ. 4770 (SAS), 2003 WL 1858153, at *7 (S.D.N.Y. Apr. 10, 2003) (noting that plaintiff is allowed to plead both contract and quasi-contract claims even though he may only recover on one such ground).  However, where, as here, "both parties agree that a valid and enforceable contract exists between them, [a party] may not plead the quasi-contractual theory of unjust enrichment."  *New Paradigm Software Corp. v. New Era of Networks, Inc.*, 107 F. Supp. 2d 325, 329 (S.D.N.Y. 2000). That is, where an express contract is conceded, a party may not proceed also on a quasi-contract theory "because it is foreclosed by the very existence of the express contract." *Arthur Properties, S.A. v. ABA Gallery, Inc.*, No. 11 Civ. 4409 (LAK), 2011 WL 5910192, at *4 (S.D.N.Y. Nov. 28, 2011) (dismissing unjust enrichment claim); *see also Fishman v. Philadelphia Fin. Life Assurance Co.*, No. 11 Civ. 1283 (TPG), 2016 WL 2347921, at *13 (S.D.N.Y. May 3, 2016) ("[A] claim for unjust enrichment may only survive as an alternative theory of liability when the existence of the contract is in dispute.").

Defendants argue that Plaintiff's quasi-contract claims fail because they are based on amounts due under the loan agreement, duplicative of the breach of contract claim, and are otherwise contrary to the parties' "no oral modification clause.  Mem. in Supp. Mot. at 18–19.

The Court concludes that the claims are foreclosed by the existence of the express contract and grants the motion to dismiss as to Counts VI and VII.  Here, the loan agreement covers the subject matter of the dispute, namely, the parties' relationship and their duties and obligations pursuant to the $38 million loan.  *See generally* Loan Agreement; *see also Bluecrest Cap. Mgmt.*, 52 F. Supp. 3d at 634.  Importantly, the

existence and enforceability of the loan agreement is not in dispute, only its *construction* in light of the COVID-19 pandemic and the parties' discussions between 2020 and 2021. *See Speedfit LLC v. Woodway USA, Inc.*, 53 F. Supp. 3d 561, 580 (E.D.N.Y. 2014) (concluding that a cause of action for unjust enrichment cannot lie where an enforceable contract governs the disputed matter). Accordingly, while Plaintiff may pursue its breach allegations, it is barred from pursuing quasi-contract relief here.

Defendants' motion is denied as to Counts VI and VII.

### C.  Motion to Strike

In their motion, Defendants argue for alternative relief absent dismissal of the complaint. Mem. in Supp. Mot. at 22. They move to strike two categories of allegations: (1) claims for consequential, exemplary, or punitive damages, and (2) allegations regarding oral representations or oral modifications. Defendants underscore that the loan agreement contains an exculpatory clause that prohibits claims for consequential, exemplary, or punitive damages, *see* Loan Agreement at 94 § 10.13, and otherwise requires that all modifications be in writing, *see id.* at 92–93 § 10.7. Mem. in Supp. Mot. 22–23.

As set forth above, motions to strike are generally disfavored, *FedEx.*, 2017 WL 633445, at *2, and they are not intended to "furnish an opportunity for the determination of disputed and substantial questions of law." *Cty. Vanlines Inc.*, 205 F.R.D. at 153.

Defendants' motion to strike is denied. The Court cannot conclude at this stage that there exists *no* set of facts which could be proved support of the allegations that Defendants seek to strike. In regard to the first group of allegations, as Plaintiff points out—and as Defendants concede—exculpatory clauses are not enforceable as to willful or grossly negligent acts. Mem. in Opp'n Mot. at 30–31; *see also* Reply Memorandum in Support of Motion ("Reply Mem. in Supp. Mot."), Doc. 33 at 13–14; *Kalisch-Jarcho, Inc. v. City of New York*, 58 N.Y.2d 377, 384–85 (1983) (concluding that an exculpatory agreement, "no matter how flat and unqualified its terms, will not exonerate a party from

liability under all circumstances . . . .  [I]t will not apply to exemption of willful or grossly negligent acts")).  Throughout the complaint, Plaintiff alleges that Defendants acted with gross negligence when they made misrepresentations and otherwise "hoodwinked Plaintiff" for their own financial benefit.  *See, e.g.*, Compl. ¶¶ 1–8, 24, 28, 57, 63, 69.  And as described above, Plaintiff provides numerous facts to support its contentions.  *See id.* ¶¶ 1–8; 16–29.  Accordingly, the allegations cannot be stricken at this stage.

The same is true of the second set of allegations that Defendants seek to strike. As described above, under the doctrine of partial performance, oral agreements may be enforced in circumstances like these, where a party has partially performed under the terms of the oral agreement.  *Argenti*, 155 F.3d at 121.  Because there is thus a set of circumstances under which the allegations could be proven, the Court denies the application.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion is GRANTED in part and DENIED in part.  Specifically, Counts III, IV, V, VI, and VII of the complaint are dismissed, and Defendants' alternative application to strike various allegations is denied in its entirety.

The parties are directed to appear for a telephonic status conference at 10:30 AM on April 14, 2023.  The parties are directed to dial (877) 411-9748 and enter access code 3029857#.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 27.

It is SO ORDERED.

Dated:    March 20, 2023
              New York, New York

_____
              EDGARDO RAMOS, U.S.D.J.