

Park 80 West-Plaza One     (201) 845-9600 Main
250 Pehle Avenue     (201) 845-9423 Fax
Suite 401
Saddle Brook, NJ 07663

Attorneys at Law                                                       njlawfirm.com

Matthew F. Gately, Esq.
mfg@njlawfirm.com
Direct Line:  (551) 497-7189
Cell: (201) 264-1995

September 26, 2023

<u>Via ECF</u>
Hon. Arun Subramanian
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007-1312

         Re:     <u>360 N. Rodeo Drive, LP v. Wells Fargo Bank, N.A. et al</u>
                     Case No. 1:22-cv-767(AS)

Dear Judge Subramanian:

      My firm, along with Ross LLP, represents Plaintiff in the above-captioned litigation. Pursuant to L. Civ. R. 37.2 and Section 5 of Your Honor's preferences, we write to request a discovery conference due to defendant Midland Loan Services' objections to producing the personnel files (or similar employment-related documentation) of two of its employees: Chris Valencia and Derek Stephens. As established below, because these two individuals were intimately involved in the transactions and events at the center of this case, these documents are discoverable.

**BACKGROUND**

      Plaintiff is a limited partnership that previously owned Luxe Rodeo Drive Hotel. This case involves a $38 million loan to Plaintiff, which was serviced by defendant Midland. While the Loan Agreement required that Plaintiff not "cease to operate the Property as a hotel and retail property[,]" the COVID-19 pandemic made this economically unfeasible. Plaintiff discussed this matter with Midland employee Chris Valencia, who agreed with the decision to close the hotel and made clear that no ill consequence would result. In multiple oral and written communications thereafter, Midland's point of contact with Plaintiff represented that Plaintiff was not in default. This litigation arises from Defendants' decision to—about a year later directly contradicting Midland's representations—reverse course and suddenly claim that Plaintiff had breached the Loan Agreement and owed approximately $9.5 million in interest and penalties. As Plaintiff acted



in conformity with—and in reliance upon—Midland's representations, Valencia's and Stephens' actions, competency, motives, performance, training, prior conduct, incentives, and disciplinary history are highly relevant and discoverable, including because the recklessness or intentions of those two points of contact would form the basis for Plaintiff's dismissed without prejudice fraud claim.  Midland has, however, refused to produce the following requested information:

> **REQUEST FOR PRODUCTION NO. 25:**
> The personnel file, or other similar file, repository, or collection of employment-related documentation, for Chris Valencia.[1]
>
> **RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**
> Defendant incorporates by reference its Preliminary Statement and General Objections set forth above as though set forth fully herein. Defendant objects that the term "personnel file" is undefined, vague, and ambiguous. Defendant objects on the grounds that the Request does not seek documents relevant to the claims and defenses in this matter, nor which would lead to the discovery of relevant evidence. Defendant further objects to this Request to the extent it seeks information protected by, among other privileges, the attorney-client privilege and attorney work product doctrine. Defendant further objects on the ground the request is overbroad and unduly burdensome and does not contain any time limitation.

Plaintiff met and conferred with Midland over its refusal to produce documents responsive to RFP Nos. 25 and 26 in at least two different meet-and-confer videoconferences with counsel present.  The most recent conference took place on September 25, 2023, and lead trial counsel for both Plaintiff and Midland participated, and confirmed that Midland would staunchly refuse to produce responsive documents.  Plaintiff was left with no choice but to seek this conference.

## ARGUMENT

While an employer may have "an interest in maintaining the confidentiality of employee personnel files[,] [t]here is no rigid rule prohibiting the discovery of employee personnel files. Indeed, in most cases, a protective order can appropriately remedy privacy concerns arising from the discovery of personnel records."  *Barella v. Vill. of Freeport*, 296 F.R.D. 102, 106 (E.D.N.Y. 2013) (internal quotations and citations omitted) (ordering production of personnel records when producing party would enter into a confidentiality stipulation); *see also Sperling v. Harman Int'l Indus.*, No. 10-cv-2415, 2011 U.S. Dist. LEXIS 103455, at *6 (E.D.N.Y. Sept. 14, 2011) (there are no bright-line rules regarding the discovery of employees' personnel files; discoverability turns on the specific allegations in the case).

---

[1] RFP No. 26 is an identical request relating to Derek Stephens, to which Midland responds with identical objections.



In a variety of industries and circumstances, courts have permitted discovery of personnel records of the individuals handling the plaintiff's 'file.' *See Smithfield Bus. Park, LLC v. SLR Int'l Corp.*, No. 12-cv-282, 2014 U.S. Dist. LEXIS 51058, at *9 (E.D.N.C. Apr. 4, 2014) ("Several courts have recognized that an employee's personnel file may be subject to discovery especially where the employee's actions have a bearing on a party's claim or defenses."). For example, in *ADL, LLC v. Tirakian*, the plaintiff, ADL, alleged that two individual auditors misrepresented certain facts causing it to make a certain investment. No. 06-cv-5076, 2007 U.S. Dist. LEXIS 46198, at *1 (E.D.N.Y. June 26, 2007). ADL sought discovery of the auditors' "employment and personnel files, including reviews of performance, termination or resignation information." *Id.* at *5. As the auditors' job performances were relevant to the allegations in the case and that "evidence of other wrongs or acts [would be] admissible to prove intent, absence of mistake, or accident[,]" the Court ordered that the auditors had to produce any information in their files that related to "performance reviews, complaints, evaluations, training, and termination/resignation." *Id.*; *see also Compuware Corp. v. Moody's Investors Servs.*, 222 F.R.D. 124, 130 (E.D. Mich. 2004) (while any comments relating to the specific transaction at issue are certainly discoverable, in addition, any "general statements about either habitual recklessness or misrepresentation" were also discoverable); *In re Hawaii Corp.*, 88 F.R.D. 518, 522 (D. Haw. 1980) (personnel and employee files discoverable as they may evidence the qualifications, experience, or competence of the individuals working on a matter, such as evaluations containing "explicit descriptions of particular instances of employee negligence"). Likewise, information relating to an employee's compensation structure and bonus incentives, as well as documents used to track employee performance, may be relevant to explaining an employee's actions in handling a particular loan, transaction, claim, *etc.* *See Rosen v. Provident Life & Accident Ins. Co.*, 308 F.R.D. 670, 683 (N.D.Ala. 2015) (documents evidencing how company "compensated and incentivized its employees" were discoverable and privacy concerns could be rectified through a confidentiality order); *Scripps Health v. Nautilus Ins. Co.*, No. 21-cv-1634, 2022 U.S. Dist. LEXIS 238892, at *16-17 (S.D. Cal. Dec. 23, 2022) (disclosure of compensation structure relevant to determine whether employees had improper incentives to take specific actions in handling a specific claim); *O'Connor v. GEICO Indem. Co.*, No. 17-cv-1539, 2018 U.S. Dist. LEXIS 46285, at *5-6 (M.D.Fla. Mar. 21, 2018) (documents demonstrating "history of the employees' training, competence, evaluation, compensation, discipline, educational background, work duties, and hours of work" are discoverable).[2]

Here, Valencia's and Stephens's representations and actions go to the heart of the parties' dispute, including Plaintiff's claim that Midland's oral representations were fraudulent. Midland's representatives may have chosen to misrepresent Midland's position for financial reasons (bonuses tied to fees and fines collected), a lack of competency or training (recklessness on Midland's part), or any number of reasons, any of which would be relevant and discoverable. As such, Plaintiff respectfully requests a discovery conference with the Court.

---

[2] When a Court is uncertain as to whether personnel records should be produced, it can conduct an *in camera* inspection. *See, e.g.*, *Kerman v. City of New York*, No. 96-cv-7865, 1997 U.S. Dist. LEXIS 16841, at *18 (S.D.N.Y. Oct. 24, 1997).



Respectfully submitted,

*/s/ Matthew F. Gately*

Matthew F. Gately

cc:  All Counsel of Record *(via ECF)*

The Motion is GRANTED. Because Defendants deny that the alleged statements modifying the contract were ever made, the characters of the employees alleged to have made the statements are relevant. And Defendants have not articulated any burden from this production. In producing the personnel files, however, Defendants may redact sensitive information so long as they include a log briefly describing the types of information redacted.

The Clerk of Court is directed to close ECF 49.

SO ORDERED.

Arun Subramanian, U.S.D.J.
Date: September 29, 2023