UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 360 N. RODEO DRIVE, LP,<br><br>                              Plaintiff,<br><br>     -against-<br><br>WELLS FARGO BANK, NATIONAL ASSOCIATION et al.,<br><br>                              Defendants. | 22-cv-767 (AS)<br><br>OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

## BACKGROUND

Plaintiff 360 N. Rodeo Drive, LP owned a luxury hotel in Beverly Hills. Am. Compl. ¶ 1, Dkt. 73. When the pandemic hit, hotel occupancy plummeted. ¶ 3. Plaintiff decided it would make the most economic sense to close the hotel and repurpose the property. *Id.* But its mortgage had a covenant requiring it to operate the hotel as a hotel. ¶ 2. So it spoke with an employee of Defendant Midland Loan Services, who allegedly told Plaintiff that the change would be fine so long as it continued to make payments. ¶ 4. More than a year (and many more alleged assurances) later, Midland sent Plaintiff a bill for millions in default interest. ¶¶ 5–7. Plaintiff sold the hotel and paid Midland these (and other) fees. ¶ 8. It has sued Midland and Wells Fargo (the trustee of the mortgage noteholders) under various theories of breach and fraud.

This case is scheduled for a bench trial in less than a month. Under the Court's individual practices, "[a]bsent good cause, the Court will not ordinarily have summary judgment practice in a non-jury case." Individual Pracs. ¶ I(i). Nevertheless, Defendants have filed for summary judgment. Dkt. 78. For the reasons below, the motion is DENIED.

## LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if a reasonable jury could find for either side. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is "material" if it could "affect the outcome." *Id.* The Court views the record "in the light most favorable to the non-movant." *Williams v. MTA Bus Co.*, 44 F.4th 115, 126 (2d Cir. 2022) (cleaned up). But if the non-movant will bear the burden of proof on an issue at trial, it must point to some evidence supporting the "essential element[s]" of its position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26 (1986).

## DISCUSSION

### I. The pre-negotiation letters are ambiguous

Midland's main argument is that a pre-negotiation letter from March 2020 bars all the claims.[1] *See* Dkt. 82-2. The letter set the ground rules for the "Discussions" between Plaintiff and Midland. For example, the letter said that "neither party shall be permitted to assert claims … based on the conduct or process of the Discussions themselves." *Id.* ¶ 1. But the paragraph that supposedly defined these "Discussions" did little to clarify their scope:

> To ensure that discussions are as open and productive as possible and undertaken with a view toward compromise and settlement, please review this letter, which sets forth the terms and conditions under which any discussions (the "Discussions") will take place. If you are in agreement with these terms and conditions, please sign this letter in the space provided below and return the letter to Midland.

Dkt. 82-2 at 2.

Needless to say, the parties now dispute the meaning of "Discussions." Midland says this letter covers about a year of negotiations, until the loan was transferred to "special servicing" and the parties entered another pre-negotiation letter. Plaintiff says the Discussions lasted only until the parties executed the first loan modification in May 2020. If that is so, Midland's representations made after May 2020 would not be shielded by this letter. *See* Dkt. 97 ¶¶ 61–76 (noting communications after May 2020).

Midland concedes that "there was not an express duration" in the letters. Dkt. 112 at 3. But it says that "the parties' intent and the evidence of negotiations" support its reading, while Plaintiff's reading is "arbitrary and unreasonable." *Id.* But these are the kinds of arguments Midland should be making in a month, not now. It has no slam-dunk evidence of the parties' intent. And Plaintiff's reading is not ridiculous: the letter seems to contemplate that the Discussions will result in a "definitive written agreement." Dkt. 82-2 ¶ 3. The loan modification is such an agreement, so the letter might have expired at that point. At this stage, the scope of the term "Discussions" is not "reasonably susceptible of only one meaning," so it is ambiguous. *L. Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 468 (2d Cir. 2010) (citation omitted). "Summary judgment normally is inappropriate when a contractual term is ambiguous because a triable issue of fact exists as to its interpretation." *Burger King Corp. v. Horn & Hardart Co.*, 893 F.2d 525, 528 (2d Cir. 1990) (citation omitted). Just so here. The Court need not reach any of the other arguments about the letter on this motion.

---

[1] There is another pre-negotiation letter from August 2021, but the Court fails to see its relevance. All the supposed misrepresentations were made before then. In any event, it has the same language, so it would also be ambiguous. *See* Dkt. 82-3.

## II. On their own terms, the claims survive

Setting aside the pre-negotiation letter, Midland argues that the claims fail on their own terms. As discussed below, these arguments involve genuinely disputed material facts.

### A. Breach of the loan agreement

Plaintiff's first claim is that Midland breached the mortgage (or "loan agreement") by charging default interest. At the outset, the Court notes that this claim is awkward. Plaintiff styles the claim as "breach of written contract—loan agreement." Compl. at 16 (capitalization omitted). But Plaintiff's argument is really that *it didn't* breach when it stopped operating the hotel as a hotel. One version of this argument makes some sense as a breach claim: Plaintiff says Midland waived the hotel-as-hotel condition. Having waived it, Plaintiff says, Midland had no right to collect default interest. In other words, one theory of Plaintiff's claim seems to be that Midland breached a *modified* version of the loan agreement. But even this theory is a little awkward because Plaintiff would no longer be alleging a "breach of [a] *written* contract."

And Plaintiff's other theories are even more awkward because they are defenses to breach of contract: impossibility, impracticability, frustration of purpose, and immateriality. *See* Dkt. 96 at 22–28. These arguments would make sense if Midland demanded the default interest, Plaintiff refused, and Midland sued for the money. But Plaintiff has already forked over the cash. So Plaintiff seems to be seeking some kind of declaratory relief. Or perhaps Plaintiff's claim is that these defenses are relevant to whether there was ever an "Event of Default" under the contract. The parties didn't address these points on this motion, but they should consider doing so at trial.

As for the arguments they did make, there are genuine disputes of fact. Most straightforwardly, there are disputes over whether Midland modified the hotel-as-hotel obligation. True, the contract had a no-oral-modifications clause. But "when one party has induced the other party to rely on an oral modification, the first party may be equitably estopped from invoking the requirement that any modification be in writing." *Towers Charter & Marine Corp. v. Cadillac Ins. Co.*, 894 F.2d 516, 522 (2d Cir. 1990). That is what Plaintiff claims here: Midland waived the obligation, and Plaintiff relied on that waiver in closing the hotel and keeping it closed. Midland's only response is that there was no reliance. It says Plaintiff wanted to close the hotel all along, and it merely used the pandemic as an excuse. *See* Dkt. 112 at 6–7. Unsurprisingly, this account is disputed, and Plaintiff's intent is plainly a question of fact. *See* Dkt. 97 ¶ 18. Because this dispute is enough for this claim to survive, the Court need not address the other arguments.

### B. Breach of the implied covenant of good faith and fair dealing

Plaintiff's second claim is that Midland breached the implied covenant of good faith and fair dealing. The covenant requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 773 N.E.2d 496, 500 (N.Y. 2002) (citation omitted). The covenant can't create obligations that are inconsistent with the contract, but it "encompass[es]

3

any promises which a reasonable person in the position of the promisee would be justified in understanding were included." *Id.* at 501 (internal quotation marks omitted). "Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion." *Dalton v. Educ. Testing Serv.*, 663 N.E.2d 289, 291 (N.Y. 1995).

The claim here is based on Midland's allegedly misleading account statements. In each of the first fourteen months after the hotel closed, Midland sent Plaintiff statements that said Plaintiff owed nothing in default interest. Dkt. 97 ¶ 74. Plaintiff says these statements misled it, depriving it of its right to cure the default. *See* Dkt. 82-1 § 8.1(n). Midland responds that the contract didn't require it to issue account statements at all, and it had the right to exercise its default rights at any time. Maybe so. But here, Midland *did* decide to issue account statements that said Plaintiff owed nothing. And after issuing those statements for months, it slapped Plaintiff with a huge bill. There are factual questions about whether exercising its discretion in that way was arbitrary or irrational, whether Plaintiff was reasonably justified in expecting the account statements to reflect any defaults, and whether the statements deprived Plaintiff of any contractual rights. *See Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 98 (2d Cir. 2007) ("In determining whether a party has breached the obligation or covenant of good faith and fair dealing, a court must examine not only the express language of the parties' contract, but also any course of performance or course of dealing that may exist between the parties. Thus, whether particular conduct violates or is consistent with the duty of good faith and fair dealing necessarily depends upon the facts of the particular case, and is ordinarily a question of fact to be determined by the jury or other finder of fact." (internal quotation marks omitted)).

### C. Breach of the special-servicing agreement

Plaintiff's third claim is for breach of the special-servicing agreement. Midland says there was no such agreement. It says the parties didn't agree to the material terms, and this "agreement" was just an agreement to agree. Whether a contract was formed generally turns on questions of fact, such as "what the parties said, what they intended, and how a statement by one party was understood by the other." *Ronan Assocs., Inc. v. Loc. 94-94A-94B, Int'l Union of Operating Eng'rs*, 24 F.3d 447, 449 (2d Cir. 1994); *see also Compass Prods. Int'l, LLC v. Charter Commc'ns, Inc.*, No. 2022 WL 94861, at *5 (S.D.N.Y. Jan. 10, 2022) ("Whether there has been a meeting of the minds on all essential terms is a question of fact that must be resolved by analyzing the totality of the circumstances."), *aff'd*, 2023 WL 2358479 (2d Cir. Mar. 6, 2023).

Here, Plaintiff says a series of phone calls, emails, and actions established the agreement. Dkt. 97 ¶¶ 85–88. Plaintiff agreed to consent to transferring the loan to special servicing and paying the associated fees. ¶¶ 85, 89. In exchange, Midland agreed to continue negotiating certain fee and penalty waivers, and it also agreed that Plaintiff could transfer its loan out of special servicing at any time. ¶¶ 86–88. Plaintiff says Midland breached by refusing to negotiate and refusing to transfer the loan out of special servicing. ¶¶ 92–96. Viewing the evidence in the light most favorable to Plaintiff, this contract is not an agreement to agree, and Plaintiff has raised triable issues as to whether it was formed. *See Brown v. Cara*, 420 F.3d 148, 153 (2d Cir. 2005). Because this

4

theory is enough for this claim to survive, the Court does not address the promissory-estoppel theory.

### D. Negligent misrepresentation

Finally, Midland challenges Plaintiff's negligent-misrepresentation claim. As with the previous claim, Midland essentially repeats the arguments it made against Plaintiff's motion to amend, and it doesn't bolster them with any citations to the record. The Court reaches the same conclusion as it did on the motion to amend. Midland might well prevail in showing at trial that there was no special relationship. But whether such a relationship exists is based on a fact-intensive, three-part balancing test. *See 360 N. Rodeo Drive, LP v. Wells Fargo Bank, Nat'l Ass'n*, 2024 WL 449401, at *2–3 (S.D.N.Y. Feb. 6, 2024). And Plaintiff has pointed to some evidence potentially relevant to some of those factors. *See* Dkt. 97 ¶¶ 64–70. So the Court will not grant summary judgment on this claim.

## CONCLUSION

For these reasons, Defendants' motion is DENIED. The Clerk of Court is directed to close Dkt. 78.

SO ORDERED.

Dated: June 25, 2024
New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge